Filed 11/10/22  Debonne v. Debonne CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BERNARD JACQUES DEBONNE, Individually and as Trustee, etc. et al., Plaintiffs and Respondents, v. YANN DEBONNE, Defendant and Appellant. | E074972 (Super. Ct. No. PSC1601655) OPINION |

APPEAL from the Superior Court of Riverside County.  Kira L. Klatchko, Judge.

Affirmed.

Law Offices of Michael S. Overing, Michael S. Overing and Edward C. Wilde;

Bochnewich Law Offices, Peter Bochnewich and Jacquetta Bardacos, for Defendant and

Appellant.

Roemer & Harnik, Brian S. Harnik, Mary E. Gilstrap, Helene Dreyer Koch and

Andrew G. Montez, for Plaintiffs and Respondents.

1

# I.

## INTRODUCTION

On behalf of himself and his companies, Bernard Debonne sued his son, Yann Debonne, for claims stemming from Yann's alleged elder abuse of Bernard. The trial court awarded Bernard[1], Debonne Asset Management, LLC (DAM), and Debonne Property Management, Inc. (DPM) about $3.75 million in damages and about $402,600 in attorney's fees.

Yann argues (1) the trial court lacked subject-matter jurisdiction over DAM; (2) Bernard's claims are barred by the statute of limitations; (3) the trial court erroneously excluded various documents as privileged; (4) the trial court erroneously denied Yann's motion for a new trial; (5) the trial court awarded excessive damages; and (6) the trial court improperly calculated Respondents' attorney's fees award. We find no error and affirm.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Bernard ran a successful farming company from 1965 until 2007, when he decided

---

[1] We refer to Bernard and Yann by their first name because of their shared last name. We mean no disrespect.

[2] We have had considerable difficulty determining the relevant facts and trial court proceedings because Yann failed to "[p]rovide a summary of the significant facts limited to matters in the record" and did not clearly discuss this case's factual and procedural background in his opening brief. (Cal. Rules of Court, rule 8.204(a)(2)(C).) And as discussed in more detail below, Yann's opening brief is deficient in other respects. Our recitation of the relevant background is therefore truncated.

to convert the company into DPM. Bernard was DPM's only shareholder, and the company focused on managing his real estate holdings.

In September 2008, when Bernard was in his 80s, he began to suffer from severe mental illness. Bernard became depressed and suicidal and was hospitalized for nearly a month. In October 2008, Bernard's attorney executed a power of attorney, which appointed Yann as Bernard's attorney-in-fact, personally and as the trustee of Bernard's trust.

In April 2010, DAM was formed under Delaware law. DAM was formed as a holding company for Bernard's businesses. Yann and Bernard were its only members.

Bernard continued to suffer from serious, but sometimes intermittent mental health issues through 2013. Although Bernard's mental health issues improved significantly toward the end of 2012, it was not until August 2013 that Bernard could fully care for himself again.

In February 2013, Bernard revoked Yann's power of attorney, and removed him as a manager of DAM in August 2013. Around the spring or summer of 2013, Bernard began to investigate the state of his business affairs. Bernard found that his companies' records had been poorly managed and that there were a number of missing documents. After receiving bank records that had gone missing at some point in the first half of 2014, Bernard began to suspect Yann had improperly managed his financial affairs in recent years. For about a year, Bernard tried to obtain all of the records necessary to assess the state of his businesses. He eventually concluded that about $1 million of his assets had

gone missing.  Bernard demanded Yann explain various transactions he had made in the past few years and also demanded that Yann return some of Bernard's property and funds.

In April 2016, Bernard, DPM, and DAM (collectively, Respondents) sued Yann for breach of fiduciary duty, conversion, financial elder abuse, fraud, violation of Penal Code section 496, constructive trust, and for an accounting.[3]  After a lengthy bench trial, the trial court issued a thorough written order ruling largely in Respondents' favor.  The trial court awarded Respondents about $3.74 million and about $400,000 in attorney's fees and costs.  The trial court later denied Yann's motion for a new trial, and Yann timely appealed.

III.

DISCUSSION

A. *Subject-Matter Jurisdiction*

"California's superior courts are courts of general jurisdiction, which means they are generally empowered to resolve the legal disputes that are brought to them" unless they have been expressly stripped of jurisdiction to hear the case.  (*Quigley v. Garden Valley Fire Protection District* (2019) 7 Cal.5th 798, 808.)  Yann claims DAM's cancelling its registration with the California Secretary of State in 2016 means that DAM could not file or maintain this action against him under Corporations Code section

---

[3]  Respondents alleged the same claims against Yann with the exception that only Bernard alleged a financial elder abuse claim.

4

11708.07, subdivision (a) (section 11708.07(a)).[4] Yann thus argues the trial court lacked subject-matter jurisdiction over DAM at the time of the 2019 trial. We disagree.

Corporations Code section 11708.07, subdivision (a) (section 11708.07(a)) provides in full: "A foreign limited liability company transacting intrastate business in this state shall not maintain an action or proceeding in this state unless it has a certificate of registration to transact intrastate business in this state." With some exceptions not applicable here, section 11708.07(a) precludes a foreign corporation conducting business in California from lawfully prosecuting a lawsuit in the California courts if the corporation is not registered to do business in California. (See *Conseco Marketing, LLC v. IFA & Ins. Services, Inc.* (2013) 221 Cal.App.4th 831, 840.)

But Yann does not cite, and we cannot find, any authority that supports his argument that section 11708.07(a) strips California courts of subject-matter jurisdiction over a foreign corporation's lawsuit if that corporation is unregistered in California. Yann is correct that a foreign corporation conducting business in California that has not registered with the California Secretary of State "may not . . . *maintain* an action [in California courts] commenced prior to" registering. (*United Medical Management, Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1739; see also *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1603-1604 (*Color-Vue*) ["Suspension of corporate powers results in a lack of *capacity* to sue, not a lack of *standing* to sue."].)

---

[4] We grant Yann's May 17, 2021 request for judicial notice of documents filed with the California Secretary of State concerning this issue.

But this does not mean that a California trial court lacks subject-matter jurisdiction over an unregistered foreign corporation's lawsuit. Instead, the corporation only lacks the capacity to prosecute the case. The case should therefore be stayed—not dismissed for lack of subject-matter jurisdiction—to allow the corporation to register. (*United Medical Management, Ltd. v. Gatto*, *supra*, 49 Cal.App.4th at p. 1739.) Until the corporation registers with the California Secretary of State, it lacks the capacity to prosecute a lawsuit in the California courts, even though it still may "*commence* an action in [California] state court." (*Ibid.*)

A corollary of this rule is that a defendant challenging a foreign corporation's capacity to sue must do so at "at the earliest opportunity," either in its answer or in a demurrer. (*Color-Vue*, *supra*, 44 Cal.App.4th at p. 1604.) If the defendant does not do so, it forfeits any challenge to the foreign corporation's capacity to prosecute the case. (*Ibid.*)

Yann did not raise any issues about DAM's capacity in the trial court. By failing to do so until the first time on appeal, Yann forfeited his argument that DAM could not prosecute this action at the time of trial under section 11708.07(a) because it was not registered with the California Secretary of State. (*Color-Vue*, *supra*, 44 Cal.App.4th at p. 1604.) We therefore decline to address the issue.[5]

---

[5] Yann also argues Bernard perjured himself at trial by testifying that DAM was still in existence at the time of the July 2019 trial in an effort to secure the trial court's subject-matter jurisdiction. Because the trial court had subject-matter jurisdiction irrespective of Bernard's testimony, we need not address this argument.

6

B. *Statute of Limitations*

Yann contends Bernard's claims, filed in April 2016, were barred by the three-year statute of limitations (Code Civ. Proc., § 338, subd. (d)).[6] The trial court found otherwise for four independent reasons: (1) Bernard was not on notice of his claims against Yann until August 2013 because his mental health issues prevented him from discovering Yann's wrongdoing before then; (2) Yann's "status as a fiduciary tolled the running of the statute [of limitations]"; (3) the statute of limitations should be tolled under Code of Civil Procedure section 352, subdivision (a) (section 352(a)); and (4) "alternatively," the statute of limitations should be equitably tolled.

In his opening brief, Yann focuses mostly on the trial court's third and fourth reasons for finding Bernard's claims were not time-barred. Although it is unclear whether Yann challenges the trial court's first reason for finding Respondents' claims timely, Yann does mention the court's second reason in his opening brief. By failing to do so, Yann failed to meet his burden of showing that the trial court erred in finding that Bernard's claims were not time-barred.[7] (*Kurinij v. Hanna & Morton* (1997) 55

---

[6] It is unclear from Yann's opening brief whether he argued in the trial court that the statute of limitations barred DAM and DPM's claims as well as Bernard's claims. The trial court discussed only whether Bernard's claims were time-barred, and Yann does not argue that DAM and DPM's claims are time-barred in his opening brief. We therefore discuss only whether the trial court properly found that Bernard's claims were timely filed.

[7] We decline to address Yann's arguments on the issue raised for the first time in his reply brief. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428.)

Cal.App.4th 853, 865 [judgment is presumed correct and the appellant has the burden of proving reversible error]; *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [appellant's failure to brief issue on appeal waives it].) We affirm the trial court's finding that Bernard's claims were timely filed on that that basis alone.

In any event, the trial court properly found that the statute of limitations should be tolled for Bernard's claims under section 352(a). That statute provides in relevant part that "[i]f a person entitled to bring an action . . . is at the time the cause of action accrued either under the age of majority or *lacking the legal capacity* to make decisions, the time of the disability is not part of the time limited for the commencement of the action." (Italics added.) Thus, under section 352(a), if Bernard lacked "the legal capacity to make decisions" when his claims against Yann accrued, then the three-year statute of limitations[8] did not begin unless and until he regained "the legal capacity to make decisions." (See *In re Mirapex Products Liability Litig.* (8th Cir. 2019) 912 F.3d 1129, 1132; *Hsu v. Mt. Zion Hospital* (1968) 259 Cal.App.2d 562, 571.)

We independently review the trial court's interpretation of a statute. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 82-83.) When, as here, the facts are disputed, we review for substantial evidence the trial court's finding that a plaintiff lacks legal capacity under section 352(a) and thus the statute of limitations should be tolled. (See *Winograd*

---

[8] We agree with the parties and the trial court that Respondents' claims relevant to this appeal are subject to a three-year statute of limitations. (*Hatch v. Collins* (1990) 225 Cal.App.3d 1104, 1110.)

8

*v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632; *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.) Under that standard of review, "[i]f the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed." (*Winograd v. American Broadcasting Co.*, *supra*, at p. 632.) Substantial evidence is "evidence of 'ponderable legal significance, . . . reasonable in nature, credible, and of solid value.'" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873, italics omitted.) When reviewing the trial court's judgment for substantial evidence, we "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630.) We may not reweigh the evidence and are bound by the trial court's credibility determinations. (*Heller v. Pillsbury Madison & Sutro* (1996) 50 Cal.App.4th 1367, 1384.)

Yann claims the trial court erred because, as the court acknowledged, Respondents did not argue Bernard was *completely* incapacitated. But the trial court correctly observed that the standard for tolling the statute of limitations under section 352(a) is not whether the plaintiff suffers from "*total* legal 'incapacity.'" (Italics added.) A person lacks the "legal capacity to make decisions" under section 352(a) when he or she is "incapable of caring for his [or her] property or transacting business or understanding the nature or effects of his [or her] acts." (*Pearl v. Pearl* (1918) 177 Cal. 303, 307; *Hsu v.*

*Mt. Zion Hospital*, *supra*, 259 Cal.App.2d at pp. 574-575.)[9] The trial court rightly recognized and applied this standard.[10] We therefore disagree with Yann that the trial court applied the wrong standard under section 352(a) or otherwise misinterpreted the statute.

Yann argues the trial court erred in tolling the statute of limitations because the court did not find that Bernard lacked legal capacity. Yann is mistaken. The trial court found that Bernard "was not truly capable of caring for his property or transacting business, or understanding the nature of his actions after his hospitalization in 2008," and remained "unable to live alone" and "unable to care for himself in even the most basic sense" until August 2013, "when he returned to his right mind." The trial court thus found that Bernard was "entitled to tolling under . . . section 352." These findings show the trial court found Bernard lacked legal capacity within the meaning of section 352(a).

To make that finding, the trial court found relied mostly on the testimony of Bernard's long-term caretaker, Maria Reza, and two of Bernard's treating physicians, Dr. Roxana Farinpour and Dr. Anthony Bassinelli, all of whom described Bernard between 2008 and the summer of 2013 as "as a virtual zombie who was illogical, irrational,

---

[9] "In 2014, the California Legislature amended § 352(a) to replace the term 'insane' with the phrase 'lacking the legal capacity to make decisions.' 2014 Cal.Stat. ch. 144, § 4. Courts continue to rely on pre-2014 case law in interpreting the amended statute." (*In re Mirapex Products Liability Litig.*, *supra*, 912 F.3d at p. 1132, fn. 2.)

[10] Even if Respondents did not argue Bernard lacked legal capacity under section 352(a), as Yann contends, we may affirm on any basis presented by the record, even if not advanced by a party below. (*Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 98.)

chronically suicidal, and unable to care for himself and his basic human needs." Drs. Farinpour and Bassinelli also testified that Bernard's serious mental health issues "impaired his judgment, reasoning ability, and memory." Based on their testimony and Reza's testimony, the trial court found that Bernard was "so preoccupied with killing himself" from 2008 until at least August 2013 "that he was unable to care for himself in even the most basic sense" and, in turn, that he lacked the "legal capacity to make decisions" under section 352(a) during that time. Substantial evidence thus supports the trial court's finding that tolling the statute of limitations was appropriate under section 352(a). (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 ["The testimony of one witness, even that of a party, may constitute substantial evidence."]; *Winograd v. American Broadcasting Co.*, *supra*, 68 Cal.App.4th at p. 632.)

Moreover, Yann provides no reasoned argument why the trial court erroneously relied on the testimony of Reza, Dr. Farinpour, or Dr. Bassinelli in reaching that conclusion. In his opening brief, Yann does not mention Reza and only briefly mentions Drs. Farinpour and Bassanelli. As for Dr. Farinpour, Yann discusses her testimony only once in passing in a footnote. He argues the trial court incorrectly found that Drs. Fainpour and Bassanelli testified that a treatment Bernard received "could cause memory loss." But the testimony Yann then quotes to undermine that finding states that the therapy has been "consistently shown to compromise new learning and memory." As for Dr. Bassanelli, Yann mentions only two of his notes from June 2010.

11

In short, Yann did not comply with his obligation to properly discuss the testimony of Reza, Dr. Farinpour, or Dr. Bassanelli that the trial court relied on to toll the statute of limitations.  (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 ["[A]n attack on the evidence without a fair statement of the evidence is entitled to no consideration when it is apparent that a substantial amount of evidence was received on behalf of the respondent."].)  For that reason alone, Yann forfeited his argument that the trial court erroneously found that Bernard lacked legal capacity under section 352(a) and thus the statute of limitations should be tolled.  (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 ["An appellant . . . who cites and discusses only evidence in her favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment."]; see also *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 [appellant forfeited issue on appeal because he did not "set forth, discuss, and analyze all of the evidence on that point, both favorable and unfavorable" in opening brief].)

C.  *Privileged Documents*

Yann argues the trial court erroneously excluded various documents as attorney-client privileged.  Yann forfeited the argument by failing to adequately brief it.

The parties disputed whether about 30 documents were privileged communications between Bernard and his counsel.  According to Bernard's counsel, some of the documents concerned Bernard's estate planning, some were about the formation of DAM, and others concerns DAM's claims.  The trial court agreed with

12

Bernard's counsel that the parties and the court had to discuss each document one-by-one to determine whether it was privileged or admissible. The court and counsel therefore discussed the documents extensively. During that colloquy, the trial court found some documents were privileged, Bernard's counsel conceded some were not privileged, Yann's counsel conceded some were privileged, and the parties agreed one of the documents had already been admitted. In short, the trial court made a series of evidentiary rulings about the admissibility of about 30 documents that Bernard claimed were privileged.

Yann broadly argues that the trial court erred in excluding certain documents as privileged. But he does not identify the documents or explain with any specificity why a certain document should have been admitted. We decline to address this unspecific, undeveloped argument. (*Charney v. Standard General, L.P.* (2017) 10 Cal.App.5th 149, 154, fn. 6 [declining to address argument that trial court made several evidentiary errors because it "lack[ed] specificity"]; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 ["[I]t is counsel's duty to point out portions of the record that support the position taken on appeal" because "[t]he appellate court is not required to search the record on its own seeking error"].)

D. *Newly Discovered Evidence*

Yann moved for a new trial based on newly discovered evidence that he discovered after trial. In his opening brief, Yann explains that "since the entire argument along with the supporting evidence may be found in the record," he does not "recount it

13

at length" in his opening brief. Instead, he asks us to independently review the evidence and argument presented in his new trial motion.

We decline to do so. Yann's incorporating by reference arguments he made in the trial court "does not comply with rule 8.204(a)(1)(B) of the California Rules of Court, which requires an appellate brief 'support each point by argument and, if possible, by citation of authority.'" (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 290, fn. omitted.) Yann therefore waived his argument that the trial court improperly denied his motion for a new trial, so we need not consider it. (*Ibid.*; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 298, fn. 20 ["We therefore disregard these purported incorporations by reference."].)

E. *Excessive Damages*

Yann argues the trial court's damages award was excessive because the trial court (1) denied his request for an offset, (2) awarded interest on punitive damages, (3) awarded interest on interest, and (4) double-counted interest. We reject Yann's arguments.

1. *Offset*

Yann contends he bought "business assets" for DPM, including vehicles, phone equipment, and various business supplies. He claims was entitled to an offset in the damages award equal to the value of those assets because he bought them for DPM as a DPM employee and they have always remained in Bernard's control. The trial court

14

disagreed because Yann failed to prove the value of the assets and failed to show why an "offset of any kind" was appropriate.

We review the trial court's refusal to grant an offset for an abuse of discretion. ("As the party seeking the offset, [Yann] had the burden of proving the facts essential to it." (*Conrad v. Ball Corp.* (1994) 24 Cal.App.4th 439, 444; Evid. Code, § 500 [defendant bears the burden of proving every fact of defense].) Among other things, Yann had to prove the amount of the offset he sought. which required Yann to prove the value of the property he allegedly bought for DPM. (See *ibid*.; see also *People ex rel. Dept. of Public Works v. Giumarra Vineyards Corp.* (1966) 245 Cal.App.2d 309, 322; *Nielsen v. Farrington* (1990) 223 Cal.App.3d 1582, 1587, fn. 5 [noting party seeking offset for real estate transaction had to prove value of property].)

In his opening brief, Yann does not clearly identify all of the relevant items, does not state how much the at-issue items are individually or collectively worth, and does not properly cite evidence in the record to support his argument. We therefore cannot discern the amount of the offset, if any, Yann was entitled to receive. As a result, Yann fails to show the trial court abused its discretion in denying his request for an offset.

2. *Prejudgment Interest on Punitive Damages Award*

The trial court doubled Bernard's damages award for his breach of fiduciary duty claim (see Prob. Code, § 4231.5, subd. (c)). Yann claims that because the doubling was a form of punitive damages, the trial court could not award prejudgment interest on that amount, but erroneously did so.

15

Yann is mistaken. Respondents hired Sabby Jonathan to calculate prejudgment interest damages. Mr. Jonathan testified at length as to how he calculated interest and reached his conclusions. The court relied on Mr. Jonathan's credible testimony to calculate the prejudgment interest award. Mr. Jonathan did not calculate prejudgment interest based on the trial court's doubling Bernard's award for the breach of fiduciary claim. Thus, as the trial court explained, it "did not award prejudgment interest on the doubled damages." Yann fails to acknowledge the basis for the trial court's prejudgment interest award and entirely ignores Mr. Jonathan's testimony. As a result, Yann fails to show the trial court erroneously awarded prejudgment interest on Bernard's doubled award.

3. *Post-Judgment Interest on Prejudgment Interest*

Yann contends the trial court improperly awarded "post judgment interest on prejudgment interest." Again, Yann is mistaken.

Yann objected Respondents' proposed judgment on the ground that it would have improperly awarded Respondents post-judgment interest on interest. The trial court explained that it would not award such interest and would not refer to any post-judgment interest in the final judgment. The final judgment therefore does not award any post-judgment interest.

4. *Double-Counted Interest*

Yann mistakenly argues that the trial court awarded "interest on interest." The court did not do so.

16

Yann objected to Respondents' proposed judgment on the ground that the trial court improperly found in its written ruling that Respondents were entitled to interest on an award of interest under Delaware law. The relevant sentence in that ruling stated, *Including interest*, "DAM and the Trust are owed $1,080,044.58 in damages plus $557,092.96 in prejudgment interest thereon." (Italics added.) In response, the trial court ruled that the amounts in the proposed judgment were correct, but noted that "including interest" language in its written ruling was a "typographic error" and therefore corrected its ruling by deleting the language. As a result, the trial court did not award Respondents improper "interest on interest" in its final judgment.

5. *Attorney's Fees*

Yann argues the trial court improperly awarded Respondents attorney's fees. Yann's one-paragraph argument on the issue asks us to independently review Respondents' motion for attorney's fees and determine whether the trial court's fee award was proper. We decline the invitation. (*Placer County Local Agency Formation Commission v. Nevada County Local Agency Formation Commission* (2006) 135 Cal.App.4th 793, 815 ["We need not address this unsupported and undeveloped argument, and it is improper simply to incorporate by reference papers filed in the trial court."].)

17

IV.

DISPOSITION

The judgment is affirmed.  Respondents may recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:

RAMIREZ _____

P. J.

McKINSTER _____

J.